UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

**KENNETH K. FAVRE**                                                            **PLAINTIFF**

**V.**                            **CIVIL ACTION NO.1:07CV55 LTS-RHW**

**ALLSTATE INSURANCE COMPANY and**
**WELLS FARGO HOME MORTGAGE, INC.**                 **DEFENDANT**

<u>**MEMORANDUM OPINION ON MOTION TO ENFORCE SETTLEMENT AGREEMENT**</u>

      Kenneth K. Favre (Favre) brought this action to enforce a property insurance contract written by Allstate Insurance Company (Allstate). Favre named Wells Fargo Home Mortgage, Inc. (Wells Fargo) as a defendant "for the sole purpose of giving them notice of this suit because they are a lien holder, and **no other relief is requested**." (Complaint Paragraph Three) Wells Fargo did not file an answer, a counterclaim, or a cross-claim, and ultimately Allstate and the plaintiff negotiated a settlement of the plaintiff's claim.

      The Court now has before it Allstate's motion [23] to enforce the settlement agreement upon which the Court's August 30, 2009, Judgment of Dismissal [22] was based. The Judgment of Dismissal states:

> . . . By agreement of the parties, the Court hereby retains jurisdiction
> to enforce the settlement agreement. If any party fails to consummate
> the settlement agreement within thirty (30) days, any aggrieved party
> may move to reopen the case for enforcement of the settlement
> agreement. Upon hearing any motion for enforcement of the settlement
> agreement, the Court may award attorneys' fees and costs to the
> prevailing party.

      Favre filed his Complaint [1] on January 23, 2007. Favre is the named insured on an Allstate homeowners insurance policy (policy number 0 45 626335 11/01) covering his residence at 1708 South 1st Street, Ocean Springs, Mississippi. The policy declarations list Washington Mutual Home Loan, Inc., (Washington Mutual) as the mortgagee of the insured property. The policy provides $101,000 in Dwelling Protection, $10,100 in Other Structure Protection, and $70,700 in Personal Property Protection.

On August 22, 2009, Favre signed a document entitled "FULL AND COMPLETE RELEASE OF ANY AND ALL CLAIMS WITH CONFIDENTIALITY AND INDEMNITY PROVISIONS" (Exhibit One to Allstate's motion). This release provides, in relevant part:

> In further consideration of the sum specified hereinabove, the undersigned Kenneth Kraig Favre promises and warrants to Allstate that there are no liens or claims whatsoever on or against the sum being paid by Allstate to Kenneth Kraig Favre in consideration of this Release, and Kenneth Kraig Favre further promises and warrants that, if any such liens or claims whatsoever exist or may arise, Kenneth Kraig Favre will satisfy, resolve, pay or extinguish said liens or claims with no liability of any type whatsoever on Allstate's part.

Allstate issued a settlement check (check number 520505130) for $17,061.51 showing Favre and Wells Fargo as payees. Allstate paid a total of $350,000 to settle Favre's claim. It is unclear to me why Allstate issued a separate check for $17,061.51 as part of the settlement, but I infer that Wells Fargo's lien was $17,061.51 at the time of the settlement and that Allstate expected Favre to endorse and deliver this separate check to Wells Fargo to satisfy its lien, but I find no evidence in the record to verify this inference.

Favre and Wells Fargo could not agree on how the $17,061.51 settlement check was to be endorsed and negotiated. Favre asserted that Wells Fargo owed a substantial portion (25%) of this $17,061.51 to his attorney in accordance with the terms of the contingent fee contract Favre had signed when he engaged counsel to bring this lawsuit. While Wells Fargo does not dispute the right of Favre's attorney to collect his contingent fee, it does assert that it owes no part of that fee. This dispute has remained unresolved for over two years.

On May 4, 2009, Favre filed a Complaint for Declaratory Judgment against Wells Fargo in the Chancery Court of Jackson County, Mississippi, seeking in this manner to resolve his dispute with Wells Fargo. Wells Fargo has apparently asserted (or threatened to assert) a right of recovery against Allstate under Favre's homeowners policy. This led Allstate to take the affirmative step of asking the Court to enforce the settlement agreement and thereby resolve the dispute between Wells Fargo and Favre.

Wells Fargo asserts it is entitled to the settlement proceeds "As holder of the Note and Deed of Trust executed by [Favre], as a payee under the Allstate contract of insurance and a third party beneficiary of the Settlement Agreement between Allstate and [Favre] . . . ." Wells Fargo asserts Allstate's motion to enforce the settlement agreement should be granted and that Favre should be ordered to pay Wells Fargo's current mortgage lien (now $52,472.04) in full.

Favre has not responded to Allstate's motion, but it is apparent from reading Favre's state court complaint and the correspondence exchanged before that lawsuit was filed that Favre contends his claim for payment of his attorneys' fees should have priority over the security interest Wells Fargo is asserting.

All of the events concerning the mortgage loan that have occurred since the time of the Allstate-Favre settlement, i.e. the issues of the validity and current amount of Wells Fargo's lien, Favre's current obligations under the loan agreement, and any defenses Favre may have to enforcement of Wells Fargo's current lien, have not been framed by the pleadings in this action. Nor is there any evidence in the record bearing on these post-settlement issues.

In order to recover more than the amount of its lien at the time this action was settled ($17,061.51), Wells Fargo must establish its legal right to a greater sum in a court of competent jurisdiction on proper pleadings and proof. This relief may be available by counterclaim in the state court litigation Favre has filed, or by a separate legal action, but the issue of the enforceablilty of the Wells Fargo current lien (over and above the $17,061.51 to which Wells Fargo was entitled at the time of the settlement) is not presently before the Court and is not subject to summary adjudication on the merits as part of this Allstate motion.

The Complaint [1] asserts Wells Fargo is a "lien holder." There is no evidence I can find in the record to establish Wells Fargo's status as a lien holder, nor can I find any evidence from which I could conclude that Wells Fargo is a "payee under the Allstate policy of insurance." The Allstate policy indicates the mortgagee on the insured property is Washington Mutual Home Loan, Inc. (Washington Mutual), not Wells Fargo; but because the parties apparently concede Wells Fargo's status as a lien holder on the insured property, I will assume for purposes of deciding this motion that Wells Fargo has acquired Washington Mutual's rights under the policy.

The Allstate policy provides:

SECTION I

\*     \*     \*

18.  Mortgagee
     A covered loss will be payable to the mortgagees named on
     the Policy Declarations, to the extent of their interest and in
     the order of precedence.

Mississippi law governs the rights of the parties under the settlement agreement. Fortunately, there is a decision by the Mississippi Supreme Court almost directly on point, *Necaise v. Oak Tree Savings Bank*, 645 So.2d 1311 (Miss.1994) (*Necaise*). Under the holding of this case, Wells Fargo is not liable for any of the attorneys' fees

-3-

Favre incurred in bringing his suit against Allstate. In light of the holding in *Necaise*, I find there is no legal basis to support Favre's assertion that a portion of the $17,061.51 allocated to satisfy Wells Fargo's lien is subject to a claim for attorneys' fees.

Under his contract with his attorney, Favre owes 25% of his recovery to his attorney. (Hurricane Contingent Fee Contract, Exhibit A to Favre Chancery Court Complaint) Wells Fargo has no contract with Favre's attorney, nor does the record reflect any agreement by Wells Fargo to pay any attorneys' fee on its share of the settlement proceeds. Under *Necaise* (omitting any consideration of litigation expenses), the $350,000 settlement should have been allocated as follows:

| | |
|---|---|
| Total settlement | $350,000 |
| Less Wells Fargo lien | 17,062 |
| Less 25% Attorneys' Fee | 62,500 |
| Favre's portion of the settlement | $270,438 |

The settlement agreement is curious in that under its terms Favre warrants that there are no liens on the insured property. The fact that Allstate made a separate check for $17,061.51 and put Wells Fargo on that check as a loss payee negates any notion that Allstate was unaware of Wells Fargo's lien. Why the parties chose to make an agreement incorporating a warranty both knew to be false is known only to them, and the failure to include Wells Fargo as a party to the settlement agreement is likewise mysterious.

Wells Fargo's lien at the time the settlement agreement was signed was apparently $17,061.51, and Wells Fargo is entitled to that portion of the settlement funds, free of any claim for attorneys' fees. Whether the settlement agreement requires Favre to pay more than this amount, i.e. the question whether Favre is obliged to pay the *current* lien amount ($52,472.04) from the settlement proceeds, is far more questionable. This is not a foreclosure action by Wells Fargo, nor is it an action for a deficiency judgment. In my view, my authority at this point is limited to enforcing the rights of the parties as they existed at the time of the settlement and thereby honoring the reasonable expectations of the parties to the settlement agreement.

Going beyond an adjudication that Wells Fargo is entitled to have the $17,061.51 Favre owed at the time of the settlement would require that the parties be afforded an opportunity to discover, develop, and present all the relevant evidence bearing on the merits of Wells Fargo's claim above that sum and on Favre's defenses to that claim. That controversy involves facts that have occurred since the time the settlement agreement was signed and this suit was dismissed.

Based on the record before me at this time, I conclude that Allstate has performed its part of the settlement agreement. Favre has failed to perform in accordance with the expectation of the parties by failing to deliver the $17,061.51 portion of the settlement to Wells Fargo, as the circumstances clearly indicate all three

parties expected him to do.  Accordingly, I will enter an order requiring Favre to deliver $17,061.51 to Wells Fargo, and thereby discharge the portion of the Wells Fargo lien that existed at the time of the settlement.  I will leave the parties to decide how to proceed with respect to sorting out their other legal rights and obligations under the agreements between Favre and Wells Fargo.  These post-settlement obligations were not within the contemplation of the parties at the time the settlement agreement was signed.

In my view, in light of the clear authority of *Necaise*, Favre should have endorsed and delivered the $17,061.51 check to Wells Fargo shortly after the settlement was paid.  Because his failure to do so led to this motion, and because Allstate is the prevailing party, Allstate is entitled to an award of the reasonable attorneys' fees it has incurred in bringing this motion.  I will allow Allstate fourteen days from the date of this opinion within which to document the attorneys' fees it has incurred in connection with this motion, and I will allow Favre fourteen days to respond to that submission.

An appropriate order will be entered.

**DECIDED** this 8th day of January, 2010.

s/ L. T. Senter, Jr.
L. T. SENTER, JR.
SENIOR JUDGE