IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

KENNETH K. FAVRE                                              PLAINTIFF

VS.                                     CIVIL ACTION NO. 1:07cv55-LTS-RHW

ALLSTATE INSURANCE COMPANY, WELLS FARGO
HOME MORTGAGE, INC. AND JOHN DOES 1 THROUGH 10          DEFENDANTS

**ALLSTATE INSURANCE COMPANY'S MOTION FOR RECONSIDERATION
AND/OR MODIFICATION OF MEMORANDUM OPINION AND
ORDER ON ALLSTATE'S MOTION TO ENFORCE SETTLEMENT AGREEMENT**

Allstate Insurance Company, by and through counsel, respectfully requests the Court to reconsider and/or correct its Memorandum Opinion on Motion to Enforce Settlement Agreement and Order in this matter, and states as follows:

I.   INTRODUCTION

1.   With full recognition of the obligation of the parties to necessarily inform the Court of pertinent facts and events so as to enable the Court to accurately evaluate those facts and events and render a legal decision, the undersigned counsel acknowledges that the Court was not fully informed in this situation by the parties, through counsel, and the undersigned counsel apologizes to the Court accordingly.

2.  Nevertheless, to correct the parties' failure to fully inform the Court previously in this matter, and to provide the Court additional pertinent facts, and to simultaneously request this Court to accordingly reconsider and/or modify the Memorandum Opinion and Order entered on Motion to Enforce Settlement Agreement, the facts and accompanied documents are herewith submitted to the Court with Allstate's request for relief.

II. **MISUNDERSTANDING AS TO UNCONDITIONAL TENDER OF BENEFITS**

3.  On January 8, 2010, the Court entered a Memorandum Opinion on [Allstate's] Motion to Enforce Settlement. [Doc. No. 31]. On that same date, the Court entered an Order granting Allstate's Motion to Enforce Settlement Agreement. [Doc. No. 32]

4.  The Memorandum Opinion states it is "unclear . . . why Allstate issued a separate check for $17,061.51 as part of the settlement, but I infer that Wells Fargo's lien was $17,061.51 at the time of the settlement". [Doc No. 31]

5.  Importantly, The separate check for $17,061.51 was an unconditional tender of policy benefits made over a year before litigation, and over eighteen (18) month before settlement, such that it was <u>not</u> a part of the settlement agreement which Allstate seeks to enforce (other than being used by Mr. Favre and counsel to extinguish any possibly existing lien).

2

6. Allstate hereby provides clarification as to the separate check for policy benefits in the amount of $17,061.51 paid by Allstate in regard to this claim, as well as clarification as to the amount of the Wells Fargo's lien as it existed at the time of the settlement and as it currently exists.

### III. UNCONDITIONAL TENDER PRIOR TO AND SEPARATE FROM SETTLEMENT

7. On January 7, 2006, Allstate issued check no. 945129537 in the amount of $17,061.51 made payable to "Kenneth Favre and Washington Mutual" as an unconditional tender of benefits under the dwelling protection coverage of the Allstate policy issued to Kenneth Favre. A copy of Allstate check no. 945129537 dated January 7, 2006, is attached as Exhibit "A".

8. On January 7, 2006, when Allstate issued check no. 945129537 in the amount of $17,061.51 made payable to "Kenneth Favre and Washington Mutual", Kenneth Favre was not represented by an attorney and this lawsuit had not been filed (or even contemplated as far as Allstate is aware).

9. Over a year later, on January 23, 2007, Kenneth Favre filed this lawsuit against Allstate Insurance Company (the Plaintiff's homeowners insurance carrier) and Wells Fargo Home Mortgage, Inc. (the current mortgageholder) based on his disagreement with the payment of policy benefits to him for his

3

property damaged or destroyed by Hurricane Katrina. See Complaint [Doc. No. 1].

10. On August 3, 2007, the Plaintiff settled any and all of his claims against Allstate as a result of privately-conducted (versus court-supervised) mediation and/or negotiations for $350,000.00 in "new monies".

11. As stated previously, Allstate check no. 945129537 in the amount of $17,061.51 previously tendered unconditionally by Allstate on January 7, 2006, was **not** part of the global settlement reached at mediation on August 3, 2007, between the Plaintiff and Allstate for $350,000.00, such that $350,000.00 was paid to Mr. Favre separately, and in addition to the previously made unconditional tender of $17,061.51.

12. Prior to settlement on August 3, 2007, no discovery had been conducted in this litigation. Therefore, at the time of the settlement, Allstate did not know the status of any liens on the property and did not know if the Plaintiff had obtained an MDA grant or SBA loan by which he "paid off" or extinguished any liens, including the mortgage, as a number of people had done subsequent to Hurricane Katrina.

4

13. Nevertheless, to protect itself in the event any liens which might exist (whether asserted by a mortgageholder, MDA, SBA, or otherwise) Allstate insisted, as part of the global settlement in August, 2007, that Kenneth Favre and his legal counsel both expressly agree to pay and extinguish any possible liens (including but not limited to any liens held by any mortgageholder, MDA, SBA, or otherwise) which might still exist.

14. Moreover, because both Mr. Favre and his legal counsel expressly agreed to pay or extinguish any such liens (including but not limited to any lien held by any mortgageholder, MDA, SBA, or otherwise), the settlement check of $350,000.00 was payable only to "Kenneth K. Favre and Denham Law Firm".

15. Again, the unconditional tender of $17,061.51 made over eighteen months earlier, was separate from this settlement, and, subsequent to the settlement agreement, a dispute apparently arose between Mr. Favre, his legal counsel, and Wells Fargo.

16. On October 8, 2007, months after the settlement, counsel for Plaintiff corresponded with counsel for Allstate and provided a copy of Allstate check no. 945129537 in the amount of $17,061.51 issued January 7, 2006, along with documentation evidencing the amount of the Wells Fargo lien was $38,887.80. See copy of October 8, 2007, letter from Earl Denham to William

5

C. Griffin, along with the enclosures, attached as composite Exhibit "B".

17. Based on the Wells Fargo documentation provided by counsel for the Plaintiff which reflected the amount of the Wells Fargo lien was $38,887.80, Mr. Favre and his counsel had clearly received enough money (nine times the amount of the lien) as part of the global settlement on August 3, 2007, to pay the balance of Wells Fargo's lien in full as that lien existed at the time of settlement.

18. Mr. Denham's October 8, 2007, letter states that "when he presented the Allstate check [in the amount of $17,061.51] to his mortgage company, it did not clear the bank". The letter also contains a handwritten notation in the bottom right-hand corner that reads: "The credit for this check was specifically addressed in our settlement and was deducted from the amount tendered [to the mortgageholder] predicated on the fact that the check was still good to process". See Exhibit "B".

19. Allstate check no. 945129537 in the amount of $17,061.51 issued January 7, 2006, did not, of course, "clear the bank" when it was apparently presented by Kenneth Favre to Wells Fargo in September 2007, because (1) Wells Fargo was not a payee on the check and (2) the check had become "stale-dated" pursuant

to the pre-printed condition at the bottom of the check which read "VOID IF NOT PRESENTED WITHIN THREE HUNDRED, SIXTY-FIVE DAYS OF THE DATE OF ISSUE".  See Exhibit "A".

20.  Based on check no. 945129537 having become stale-dated, and with disagreement with Mr. Denham's personal statement that the check "was specifically addressed in or settlement" other than Mr. Favre and Mr. Denham would tender that check <u>along with payment of the balance of the mortgage to the mortgageholder</u>, Allstate reissued the $17,061.51 check on November 20, 2007.  A copy of Allstate check no. 520505130 is attached as Exhibit "C".

21.  Pursuant to Allstate learning that the current mortgageholder on the property was Wells Fargo and not Washington Mutual, Allstate reissued the unconditional tender of benefits check made payable to "Kenneth K. Favre, Wells Fargo Home Mortgage and Denham Law Firm" which, again, an unconditional re-tender.  See Exhibit "C".

22.  On November 21, 2007, Allstate check no. 520505130 was provided to counsel for the Plaintiff with Allstate's expectation the entire mortgage held by Wells Fargo would be paid and extinguished.  See copy of letter from Lisa McKay to Earl Denham dated November 21, 2007, attached as Exhibit "D".

23. Importantly, and (1) because the unconditional tender of benefits totaling $17,061.51 was made prior to any litigation and prior to settlement and was not part of the settlement, and (2) because Mr. Favre and his counsel were being re-tendered these benefits with Wells Fargo instead of Washington Mutual being listed as a mortgageholder, and (3) because this re-tender was made in addition to the $350,000.00 settlement check provided earlier to and negotiated (or "cashed") by Mr. Favre and his counsel, Mr. Favre and his counsel had been paid $367,061.51 as of November, 2007, comprised of the unconditional tender of $17,061.51 and the $350,000.00 for the global settlement.

24. The tender of $17,061.51 and the settlement for $350,000.00 was clearly the agreement of the parties as evidenced by the Full and Complete Release of Any And All Claims with Confidentiality and Indemnity Provisions. The Release clearly provided:

> Whereas, Allstate paid Kenneth Kraig Favre insurance benefits under the policy which Kenneth Kraig Favre contended were not as much as Allstate owed to him under the policy as a result of the loss;

See page 1 of Release attached as Exhibit "E".

25. The Release further provided as follows:

> FOR AND IN CONSIDERATION of the sum of Three Hundred Fifty Thousand and 00/100 Dollars ($350,000.00) and other good and valuable consideration received from Allstate Insurance Company, with the receipt and sufficiency of which being hereby acknowledged, the undersigned Kenneth Kraig Favre . . . does hereby forever discharge Allstate Insurance Company . . ."

See page 2 of Release attached as Exhibit "F".

26. A period of time of over a year passed from November, 2007, until December, 2008, during which Allstate mistakenly assumed Mr. Favre, his counsel, and Wells Fargo had accomplished negotiation of the Allstate check as an unconditional re-tender of $17,061.51 in benefits, and had also accomplished the payment and extinguishing of the remaining balance of Mr. Favre's mortgage held by Wells Fargo pursuant to the earlier settlement agreement.

27. With no mention of the apparently unpaid mortgage balance as of December 8, 2008, counsel for the Plaintiff returned Allstate check no. 520505130 (the re-tender of benefits) to counsel for Allstate stating that the check had become stale-dated yet again and requesting the check be reissued. See copies of letter from Jason Embry to Lisa McKay dated December 8, 2008,

and voided check no. 520505130 attached as collective Exhibit "G".

28. As a "re-re-tender" of benefits originally tendered by Allstate in January, 2006, almost three years earlier, Allstate issued check no. 520532171 in the amount of $17,061.51 made payable to "Kenneth Favre, Wells Fargo Home Mortgage and Denham Law Firm" on December 12, 2008. Again, this was the third tender of benefits. See copy of Allstate check no. 520532171 attached as Exhibit "H".

29. On December 16, 2008, counsel for Allstate provided Allstate check no. 520532171 to counsel for the Plaintiff. See copy of letter from William C. Griffin to D. Jason Embry dated December 16, 2008, attached as Exhibit "I".

30. **Again importantly, in December, 2008, with the unconditional "re-re-tender" of the $17,061.51 in policy benefits, Allstate was assuming and still believed that whatever balance of the mortgage held by Wells Fargo (which still existed as of the settlement) had been paid or extinguished out of the $350,000.00 settlement amount (which, again, was many times the remaining balance on the mortgage) and counsel for Allstate assumed and believed the only apparent dispute between the Plaintiff and Wells Fargo was as to this $17,061.51 check.**

10

31. Subsequently, months later, in April, 2009, Allstate became aware Wells Fargo was also demanding the apparently unpaid balance of its mortgage. Upon being made aware of this, counsel for Allstate immediately made demand on Mr. Favre, through his counsel, and also on Mr. Favre's counsel, to resolve any remaining issues as to this mortgage. See copy of letter from William C. Griffin to D. Jason Embry dated April 22, 2009, attached as Exhibit "J".

32. Known to Allstate when Allstate filed its Motion, but unbeknownst to Allstate earlier, Kenneth Favre and his counsel decided to litigate against Wells Fargo rather than pay the mortgage as they had expressly agreed with Allstate they would do. See copy of Complaint for Declaratory Judgment filed in the Chancery Court of Jackson County, Mississippi, attached as Exhibit "K".

33. Upon Wells Fargo again making demand on Allstate, Allstate in turn again made demand of Mr. Favre, through his counsel, and Mr. Favre's counsel himself, to resolve any issues as to the mortgage held by Wells Fargo. See copy of letter from William C. Griffin to D. Jason Embry dated July 2, 2009, with enclosures, attached as Exhibit "L".

34. Still subsequently, upon Wells Fargo yet again making demand on Allstate, Allstate yet again made demand of Mr. Favre, through his counsel, and Mr. Favre's counsel himself, to resolve any issues as to the mortgage held by Wells Fargo. See copy of letter from William C. Griffin to D. Jason Embry dated September 8, 2009, with enclosures, attached as Exhibit "M".

35. With Wells Fargo continuing to make demand on Allstate, Allstate continued to make demand on Mr. Favre, through his counsel, and Mr. Favre's counsel himself, to resolve any issues as to the mortgage held by Wells Fargo. See copy of letter from William C. Griffin to Earl Denham dated September 10, 2009, with enclosures, attached as Exhibit "N".

36. With Wells Fargo continuing to make demand on Allstate, Allstate continued to make demand on Mr. Favre, through his counsel, and Mr. Favre's counsel himself, to resolve any issues as to the mortgage held by Wells Fargo. See copy of letter from William C. Griffin to Earl Denham dated September 14, 2009, with enclosures, attached as Exhibit "O".

37. With Wells Fargo continuing to make demand on Allstate, and with Mr. Favre and his counsel clearly failing to comply with the settlement agreement despite Allstate's demands, Allstate was

compelled to file the Motion to Enforce Settlement Agreement [Doc. No. 23] on October 8, 2009.

38. The Honorable U. S. Magistrate to which this matter was assigned in conjunction with the presiding Honorable U. S. District Judge, conducted a conference on November 6, 2009, to try to facilitate the parties reaching a resolution of this matter and thereby render consideration of Allstate's Motion unnecessary.

39. Pursuant to agreement of the parties at the conference on November 6, 2009, which did not result in a full and final resolution, Allstate check no. 520532171 in the amount of $17,061.51 made payable to "Kenneth Favre, Wells Fargo Home Mortgage and Denham Law Firm" was endorsed by Kenneth Favre and a representative of the Denham Law Firm to Wells Fargo, and this amount was then applied to the mortgage held by Wells Fargo.

40. On November 18, 2009, counsel for Wells Fargo advised counsel for Allstate that she had provided Allstate check no. 520532171 in the amount of $17,061.51 to her client, Wells Fargo, for processing and, accordingly, the remaining balance of the Wells Fargo lien was $32,342.65 (which was comprised of the payoff amount minus the $17,061.51 check).

41. With the possibility (and hope) the matter could finally be resolved, counsel for Allstate, counsel for Wells Fargo, and Mr. Denham himself continued to have some communications as to various options for a complete resolution, but no agreed complete resolution was achieved.

42. On January 7, 2010, counsel for Wells Fargo advised counsel for Allstate that the $32,342.65 payoff amount had become stale-dated and that she would obtain and provide an updated amount to counsel for Allstate.

43. On January 22, 2010, counsel for Wells Fargo advised counsel for Allstate that the "payoff" amount of the mortgage held by Wells Fargo is currently $33,126.54 which is valid through February 21, 2010.

44. Allstate hereby requests the Court to reconsider Allstate's Motion to Enforce Settlement and modify its Memorandum Opinion and Order to reflect that the unconditional tender of the benefits in the amount of $17,061.51 by Allstate on January 7, 2006, took place well before any lawsuit was even filed and, further, these benefits were not part of the global settlement amount reached between the parties.

45. Allstate further requests the Court to reconsider Allstate's Motion to Enforce Settlement Agreement and modify its

Memorandum Opinion and Order to reflect that the amount of the mortgage at the time of the global settlement in August 3, 2007, was approximately $38,000.00 (with the exact amount unknown to Allstate), and the amount of the mortgage is now $33,126.54.

46. Allstate still further requests the Court to reconsider Allstate's Motion to Enforce Settlement Agreement and modify its Memorandum Opinion and Order to provide Allstate the relief requested in the form of an Order expressly providing that Mr. Favre shall not only be liable to Allstate for attorneys' fees and expenses in prosecuting the Motion to Enforce Settlement Agreement but also expressly provide that Mr. Favre shall either pay Wells Fargo the current amount of the mortgage of $33,126.54 or, in the alternative, if Allstate reaches an agreement with Wells Fargo and satisfies the mortgage lien, Mr. Favre shall indemnify and hold Allstate harmless for the full amount Allstate pays Wells Fargo.

WHEREFORE, THE ABOVE PREMISES CONSIDERED, and again with the undersigned counsel's apologies to the Court, Allstate requests this Court to provide Allstate the relief requested and any other relief appropriate under the circumstances.

Respectfully submitted,

ALLSTATE INSURANCE COMPANY


By: s/William C. Griffin
WILLIAM C. GRIFFIN (MSB #5021)

OF COUNSEL:

CURRIE JOHNSON GRIFFIN GAINES & MYERS
1044 River Oaks Drive
Post Office Box 750
Jackson, Mississippi  39205-0750
Telephone:    601-969-1010
Telecopier:   601-969-5120

### CERTIFICATE OF SERVICE

I do hereby certify that on January 21, 2010, I *electronically* filed the foregoing with the Clerk of the court using the ECF system which sent notification of such filing to the following:


Earl Denham, Esquire
Denham Law Firm, Ltd.
P. O. Drawer 580
Ocean Springs, MS 39566-0580

PREVIOUS ATTORNEY FOR PLAINTIFF

Gerald A. Dickerson, Esquire
346 Cox Street
Lucedale, MS 39452

CURRENT ATTORNEY FOR PLAINTIFF

Sheryl A. Bey, Esquire
BAKER DONELSON, BEARMAN, CALDWELL & BERKOWITZ, P.C.
4268 I-55 North
Jackson, MS 39211

ATTORNEY FOR WELLS FARGO


S/William C. Griffin
WILLIAM C. GRIFFIN