**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION**

KENNETH K. FAVRE                                                    PLAINTIFF


V.                                                    CIVIL ACTION NO.1:07CV55 LTS-RHW

ALLSTATE INSURANCE COMPANY and
WELLS FARGO HOME MORTGAGE, INC.                                    DEFENDANTS


**SUPPLEMENTAL MEMORANDUM OPINION
ON MOTION TO ENFORCE SETTLEMENT AGREEMENT**

On January 8, 2010, the Court entered its Memorandum Opinion [31] and Order [32] granting Allstate Insurance Company's (Allstate) motion [23] to enforce the terms of a settlement agreement Allstate reached with the plaintiff, Kenneth K. Favre (Favre). Allstate has now filed a motion [33] to reconsider the findings reflected in the Court's Opinion [31] on the grounds that the Court misunderstood some of the relevant facts underlying the current dispute among the parties.  My review of the original opinion and of the additional documents submitted in support of this motion [33] leads me to the conclusion that the original opinion should be corrected to reflect the true facts, and this supplemental opinion will undertake to do just that.

Favre brought this action to enforce a property insurance contract written by Allstate.  Favre named Wells Fargo Home Mortgage, Inc., (Wells Fargo) as a defendant "for the sole purpose of giving them notice of this suit because they are a lien holder, and **no other relief is requested**." (Complaint [1] Paragraph Three) Wells Fargo did not file an answer, a counterclaim, or a cross-claim, and ultimately Allstate and the plaintiff negotiated a settlement of the plaintiff's claim.

The Court now has before it Allstate's Motion for Reconsideration [33] of the Court's Opinion [31] and Order [32].  The August 30, 2009, Judgment of Dismissal [21] states:

> . . . By agreement of the parties, the Court hereby retains jurisdiction to enforce the settlement agreement.  If any party fails to consummate the settlement agreement within thirty (30) days, any aggrieved party may move to reopen the case for enforcement of the settlement agreement.  Upon hearing any motion for enforcement of the settlement agreement, the Court may award attorneys' fees and costs to the prevailing party.

Favre filed his Complaint [1] on January 23, 2007.  Favre is the named insured on an Allstate homeowners insurance policy (policy number 0 45 626335 11/01) covering his residence at 1708 South 1st Street, Ocean Springs, Mississippi.  The policy declarations list Washington Mutual Home Loan, Inc., (Washington Mutual) as the mortgagee of the insured property.  The policy provides $101,000 in Dwelling Protection, $10,100 in Other Structure Protection, and $70,700 in Personal Property Protection.  Wells Fargo is the successor in interest to Washington Mutual.

On August 22, 2009, Favre signed a document entitled "FULL AND COMPLETE RELEASE OF ANY AND ALL CLAIMS WITH CONFIDENTIALITY AND INDEMNITY PROVISIONS" (Exhibit One to Allstate's motion [23])(the Settlement Agreement).  The Settlement Agreement provides, in relevant part:

> *In further consideration of the sum specified hereinabove, the undersigned Kenneth Kraig Favre promises and warrants to Allstate that there are no liens or claims whatsoever on or against the sum being paid by Allstate to Kenneth Kraig Favre in consideration of this Release, and Kenneth Kraig Favre further promises and warrants that, if any such liens or claims whatsoever exist or may arise, Kenneth Kraig Favre will satisfy, resolve, pay or extinguish said liens or claims with no liability of any type whatsoever on Allstate's part.*

Pursuant to the terms of the Settlement Agreement, Allstate issued a settlement check in the amount of $350,000 payable to Favre and his attorney at that time, Earl Denham. Allstate had earlier issued, as an unconditional tender of benefits due under its policy, a check (check number 520505130) for $17,061.51 showing Favre and Wells Fargo as payees.  This check was never negotiated, and it became stale one year after it was issued.  Allstate has since, after a good deal of litigation in state court, replaced this stale check, and the replacement check has now been negotiated.  The funds represented by this check were applied to the balance of the Wells Fargo mortgage, and that check is no longer at issue.  After this check was paid to Wells Fargo, the plaintiff's mortgage balance was reduced to approximately $35,000.  The remaining balance of the mortgage continues to accrue interest in accordance with its terms, so the balance changes continually.

Wells Fargo, Allstate, and Favre have an on-going three cornered controversy concerning the remaining balance of Favre's mortgage (the shifting balance of approximately $35,000).  Wells Fargo asserts its right to be paid "As holder of the Note and Deed of Trust executed by [Favre], as a payee under the Allstate contract of insurance and a third party beneficiary of the Settlement Agreement between Allstate and [Favre] . . . ."  Wells Fargo supports Allstate's motion to enforce the settlement agreement and Allstate's motion for reconsideration.

Specifically, Wells Fargo asserts that it is entitled to have its mortgage paid from the $350,000 proceeds of the settlement between Allstate and Favre.  Favre refuses to honor Wells Fargo's claim.  The reason for Favre's refusal is not apparent in the record because Favre has not yet responded to Allstate's original motion or to Allstate's motion for reconsideration.  Thus, Wells Fargo claims that Favre should be ordered to pay Wells Fargo's current mortgage lien (approximately $35,000) in full from the proceeds of the Settlement Agreement.

In the alternative, Wells Fargo contends that Allstate should be ordered to pay the mortgage lien (pursuant to the rights Wells Fargo has as the mortgagee under the terms of Allstate's policy).  Under its alternative theory, upon paying the mortgage debt, Allstate would succeed to Wells Fargo's rights against Favre under principles of subrogation.  Wells Fargo insists that Allstate should have made Wells Fargo a payee on the $350,000 settlement check.  Because it was not included as a payee on that check, Wells Fargo asserts a right of recovery for the remaining balance of the mortgage debt directly against Allstate.  Allstate has refused to pay the balance due on the mortgage, insisting that this payment is Favre's obligation under the terms of the Settlement Agreement.

The issues of the validity and precise current amount of Wells Fargo's lien, Favre's current obligations under the Wells Fargo mortgage, the merits of any defenses Favre may have to enforcement of Wells Fargo's rights under the mortgage, and Allstate's direct obligations to Wells Fargo under its policy, have not yet been framed by the pleadings in this action.  Nor is there any evidence in the record bearing on these issues.  All the Court has to rely on at this point are pleadings, representations by the attorneys for Wells Fargo and Allstate, and the various unverified documents attached to the pleadings.

In order to recover the current balance of its mortgage debt–from either Favre or Allstate–Wells Fargo must establish its legal right to the award it seeks.  Favre must be afforded a full and fair opportunity to present any defenses he may have to payment of this mortgage debt.  Allstate must have its opportunity to enforce its rights under the Settlement Agreement, particularly the clause requiring Favre to satisfy all outstanding liens on the insured property, and Favre must be afforded his opportunity to defend against the merits of Allstate's claim against him.

The Complaint [1] asserts that Wells Fargo is a "lien holder."  There appears to be no current dispute concerning Wells Fargo's status as a mortgagee of the insured property and successor in interest to Washington Mutual.  Nor is there any apparent dispute that Wells Fargo has succeeded to the rights of Washington Mutual under the Allstate policy.

-3-

The Allstate policy provides, at page 18:

*SECTION I*

\*          \*          \*

18.   *Mortgagee*
      *A covered loss will be payable to the mortgagees named on*
      *the Policy Declarations, to the extent of their interest and in*
      *the order of precedence.*

\*          \*          \*

*The mortgagee will:*

\*          \*          \*

e)     *after a loss, and at our option, permit us to satisfy the mortgage*
       *requirements and receive full transfer of the mortgage.*

     The Settlement Agreement is curious in that under its terms Favre warrants that there are no liens on the settlement proceeds.  At the time the Settlement Agreement was signed, Allstate apparently knew of the existence of the Wells Fargo mortgage lien on the insured property.  Both the complaint [1] and the Allstate policy establish the existence of a mortgage on the insured property.  A lien on the settlement proceeds may arise from the mortgage, the policy, or both.  Yet Allstate and Favre chose to make an agreement incorporating a warranty both knew to be false, and Allstate apparently failed to include Wells Fargo as a payee on the $350,000 settlement agreement in reliance on Favre's obligation under the Settlement Agreement to satisfy any and all outstanding liens.  Whatever the reason for this, Allstate issued its check for $350,000 payable only to Favre and his attorney.

     In order to enforce the terms of the Settlement Agreement and resolve the outstanding dispute concerning payment of the balance of the Wells Fargo mortgage from the $350,000 settlement proceeds, I will need to decide several disputed issues of fact:

1.     Does Wells Fargo have a right, under the terms of the mortgage
       contract, to immediate payment of the outstanding balance of the
       mortgage debt?  Such a right may arise from destruction of the
       property securing the mortgage debt, but without the benefit of
       the instrument creating the mortgage interest, I cannot ascertain
       whether that is the case in this instance.

2.     Assuming Wells Fargo establishes its right to immediate

payment of the mortgage debt, is there any legal defense available to Favre that would prevent his being required to honor his obligation under the mortgage and pay the outstanding balance of the Wells Fargo mortgage?

3.      If Wells Fargo cannot establish its right to immediate payment of the mortgage debt (or in the event Wells Fargo establishes this right but Favre presents a valid defense to this mortgage obligation), Wells Fargo's separate rights as a mortgagee under the Allstate policy would come into play, as would Allstate's right of indemnity from Favre under the terms of the Settlement Agreement.

4.      If Wells Fargo establishes its right to payment from Favre or from Allstate, Favre's payment to Wells Fargo would satisfy his obligation to Allstate under the terms of the Settlement Agreement, and this controversy would thereby be resolved.  If Wells Fargo cannot establish its right to payment from Favre but can establish its right to payment from Allstate, the Court would then need to decide the merits of Allstate's claim against Favre under the Settlement Agreement.

In order to afford the parties a full and fair opportunity to be heard on the merits of the entire controversy, I will require Favre to file, within fourteen days of the date of this opinion, a response to the Allstate motions [23] [33] setting out his contentions concerning the four issues listed above and supporting these positions with an affidavit concerning the relevant facts that are within Favre's first hand knowledge.  Specifically, Favre must state: 1) whether he contests the validity of the Wells Fargo mortgage and/or the validity of Wells Fargo's security interest in the insured property; 2) whether he contests the amount, if any, Wells Fargo is entitled to receive under the terms of the mortgage instruments; 3) his grounds for refusing to pay the outstanding balance of the Wells Fargo mortgage; and 4) whether he contests the right Allstate has asserted under the terms of the Settlement Agreement to require Favre to discharge the Wells Fargo mortgage lien on the insured property.

Once this response has been filed, and the facts this response shows to be in controversy have been established, I will enter an order that will allow the parties to discover, develop, and present all the relevant evidence bearing on the merits of this entire dispute, and, in due course, I will resolve this dispute and enforce the terms of the Settlement Agreement.

It appears to me at this point, *subject to Favre's defenses,* that if Wells Fargo is entitled to recover the balance of the mortgage from the proceeds of the Settlement Agreement ($350,000) and/or from Allstate, regardless of who pays the Wells Fargo claim in the first instance, the ultimate responsibility for this payment will likely rest with

Favre under either his mortgage agreement or under the Settlement Agreement.  To the extent that this opinion corrects the Court's prior opinion [31], Allstate's Motion to Reconsider [33] is granted.

An appropriate order will be entered.

**DECIDED** this 4th day of October, 2010.


s/ L. T. Senter, Jr.
L. T. SENTER, JR.
SENIOR JUDGE